UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARY CRAGO,<br><br>    Plaintiff,<br><br>    v.<br><br>LEONARD, K #0877,<br><br>    Defendant. | No. 2:13-cv-531-TLN-EFB PS<br><br>FINDINGS AND RECOMMENDATIONS |

This matter was before the court on April 9, 2014, for hearing on defendant's motion for summary judgment.[1] Plaintiff Mary Crago appeared pro se; attorney Sean Richmond appeared on behalf of defendant. For the reasons stated on the record and as set forth below, defendant's motion for summary judgment must be denied.

I.    Facts

Defendant Officer Kenneth Leonard is a police officer for the Sacramento City Police Department. Declaration of Kenneth Leonard ISO Def.'s Mot. for Summ. J. ("Leonard Decl."), ECF No. 35-2 ¶ 2. Since February 2011, he has been assigned to the Police Department's Metal Theft Task Force. *Id*. ¶ 3. On December 7, 2012, defendant received information that plaintiff had recently been involved in metal and vehicle battery theft. *Id*. ¶ 4. Defendant, knowing that plaintiff was on searchable probation, went to plaintiff's house that afternoon to conduct a

---

[1] This case, in which plaintiff is proceeding pro se, is before the undersigned pursuant to Eastern District of California Local Rule 302(c)(21). *See* 28 U.S.C. § 636(b)(1).

1

probation search. *Id*. ¶¶ 5, 6. Defendant, along with three other officers, knocked on the door to the residence to announce their presence. *Id*. ¶ ¶ 6, 7. The door was answered by Donna Schacher, who led defendant and the other officers to the garage, where plaintiff resided. *Id*. ¶¶ 7, 8. When the officers arrived at the garage, the door was open and defendant observed plaintiff sitting on a mattress, digging furiously through a purse. *Id*. ¶ 9. Defendant took the purse away from plaintiff and searched the purse. *Id*. ¶¶ 10, 11. Inside the purse, defendant found a four inch glass pipe and a small baggie with white residue. *Id*. ¶ 11. The white residue subsequently tested positive for methamphetamine. *Id*. ¶ 12.

The complaint alleges that during the search, defendant took away her laptop after she informed him that she was recording the search. ECF No. 1 at 1; Pl.'s Statement of Undisputed Facts ("UDF") 7.[2] Plaintiff further alleges that defendant deleted her recording and told her that recording was not allowed. *Id*. Plaintiff contends that this conducted violated her rights protected by the First Amendment. *Id*.

II.     Defendant's Motion for Summary Judgment

   A.     Summary Judgment Standard

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment avoids unnecessary trials in cases in which the parties do not dispute the facts relevant to the determination of the issues in the case, or in which there is insufficient evidence for a jury to determine those facts in favor of the nonmovant. *Crawford–El v. Britton*, 523 U.S. 574, 600 (1998); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–50 (1986); *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471–72 (9th Cir. 1994). At bottom, a summary judgment motion asks whether the evidence presents a sufficient disagreement to require submission to a jury.

---

[2] In plaintiff's statement of undisputed facts, she cites to the Declaration of Mary Crago and various trial minutes from a different case. ECF No. 41 at 2-3. Defendant has filed objections to this evidence. *See* ECF No. 44. However, plaintiff did not submit with her opposition any of the evidence she relies upon. The court need not address defendant's objections, as the documents cited by plaintiff were not before the court and therefore were not considered in resolving defendant's motion.

The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims or defenses. *Celotex Cop. v. Catrett*, 477 U.S. 317, 323–24 (1986). Thus, the rule functions to "'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments). Procedurally, under summary judgment practice, the moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). If the moving party meets its burden with a properly supported motion, the burden then shifts to the opposing party to present specific facts that show there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 248; *Auvil v. CBS "60 Minutes"*, 67 F.3d 816, 819 (9th Cir. 1995).

A clear focus on where the burden of proof lies as to the factual issue in question is crucial to summary judgment procedures. Depending on which party bears that burden, the party seeking summary judgment does not necessarily need to submit any evidence of its own. When the opposing party would have the burden of proof on a dispositive issue at trial, the moving party need not produce evidence which negates the opponent's claim. *See e.g., Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 885 (1990). Rather, the moving party need only point to matters which demonstrate the absence of a genuine material factual issue. *See Celotex*, 477 U .S. at 323–24 ("[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See id*. at 322. In such a circumstance, summary judgment must be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment . . . is satisfied." *Id*. at 323.
/////

1    To defeat summary judgment, the opposing party must establish a genuine dispute as to a
2 material issue of fact.  This entails two requirements.  First, the dispute must be over a fact(s) that
3 is material, i.e., one that makes a difference in the outcome of the case.  *Anderson*, 477 U.S. at
4 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law
5 will properly preclude the entry of summary judgment.").  Whether a factual dispute is material is
6 determined by the substantive law applicable for the claim in question.  *Id*.  If the opposing party
7 is unable to produce evidence sufficient to establish a required element of its claim that party fails
8 in opposing summary judgment.  "[A] complete failure of proof concerning an essential element
9 of the nonmoving party's case necessarily renders all other facts immaterial."  *Celotex*, 477 U.S.
10 at 322.

11    Second, the dispute must be genuine.  In determining whether a factual dispute is genuine
12 the court must again focus on which party bears the burden of proof on the factual issue in
13 question.  Where the party opposing summary judgment would bear the burden of proof at trial on
14 the factual issue in dispute, that party must produce evidence sufficient to support its factual
15 claim.  Conclusory allegations, unsupported by evidence are insufficient to defeat the motion.
16 *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Rather, the opposing party must, by affidavit
17 or as otherwise provided by Rule 56, designate specific facts that show there is a genuine issue
18 for trial.  *Anderson*, 477 U.S. at 249; *Devereaux*, 263 F.3d at 1076.  More significantly, to
19 demonstrate a genuine factual dispute the evidence relied on by the opposing party must be such
20 that a fair-minded jury "could return a verdict for [him] on the evidence presented."  *Anderson*,
21 477 U.S. at 248, 252.  Absent any such evidence there simply is no reason for trial.

22    The court does not determine witness credibility.  It believes the opposing party's
23 evidence, and draws inferences most favorably for the opposing party.  *See id*. at 249, 255;
24 *Matsushita*, 475 U.S. at 587.  Inferences, however, are not drawn out of "thin air," and the
25 proponent must adduce evidence of a factual predicate from which to draw inferences.  *American*
26 *Int'l Group, Inc. v. American Int'l Bank*, 926 F.2d 829, 836 (9th Cir. 1991) (Kozinski, J.,
27 dissenting) (citing *Celotex*, 477 U.S. at 322).  If reasonable minds could differ on material facts at
28 issue, summary judgment is inappropriate.  *See Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th

1 Cir. 1995). On the other hand, "[w]here the record taken as a whole could not lead a rational trier
2 of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475
3 U.S. at 587 (citation omitted); *Celotex*, 477 U.S. at 323 (if the evidence presented and any
4 reasonable inferences that might be drawn from it could not support a judgment in favor of the
5 opposing party, there is no genuine issue). Thus, Rule 56 serves to screen cases lacking any
6 genuine dispute over an issue that is determinative of the outcome of the case.

   B.   Discussion

8 Defendant argues that he is entitled to summary judgment on plaintiff's First Amendment
9 claim because, even assuming plaintiff's allegations are true, he is entitled to qualified immunity.
10 Def.'s Mem. P & A ISO Mot. Summ. J., ECF No. 35-1 at 1.[3]

11 "The doctrine of qualified immunity protects government officials 'from liability for civil
12 damages insofar as their conduct does not violate clearly established statutory or constitutional
13 rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223,
14 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Resolving the defense of
15 qualified immunity involves a two-step process: the court must decide 1) whether the plaintiff has
16 alleged or shown a violation of a constitutional right; and 2) whether the right at issue was clearly
17 established at the time of defendant's alleged misconduct. *Pearson*, 555 U.S. at 232 (citing
18 *Saucier v. Katz*, 533 U.S. 194, 201-202 (2001).

19 "Qualified immunity is applicable unless the official's conduct violated a clearly
20 established constitutional right." *Pearson*, 555 U.S. at 232. To be "clearly established" "[t]he
21 contours of the right must be sufficiently clear that a reasonable official would understand that
22 what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "This is
23 not to say that an official action is protected by qualified immunity unless the very action in
24 question has previously been held unlawful, but it is to say that in light of pre-existing law the
25 unlawfulness must be apparent." *Id.*
26 /////

---

[3] Page numbers cited herein refer to those assigned by the court's electronic docketing system and not those assigned by the parties.

5

1    The complaint alleges that defendant violated plaintiff's rights under the First Amendment
2 when he took her laptop away after she informed him that she was recording the search of her
3 residence. ECF No. at 2. As early as 1995, the Ninth Circuit has recognized a "First Amendment
4 right to film matters of public interest."[4] *Fordyce v. City of Seattle*, 55 F.3d 436, 439 (9th Cir.
5 1995). Other circuits have similarly held that the First Amendment protects an individual's right
6 to record police officers in the course of carrying out their duties. *See Glik v. Cunniffe*, 655 F.3d
7 78, 82 (1st Cir. 2001) ("The filming of government officials engaged in their duties in a public
8 place, including police officers performing their responsibilities, fits comfortably within [the First
9 Amendment]."); *Gilles v. Davis*, 427 F.3d 197, 212 n.14 (3rd Cir. 2005) ("[V]ideotaping or
10 photographing the police in the performance of their duties on public property may be protected
11 activit[ies]"); *Smith v. City of Cumming*, 212 F.3d 1332, 1333 (11th Cir. 2000) ("The First
12 Amendment protects the right to gather information about what public officials do on public
13 property," including the right "to photograph or videotape police conduct.").

14    Defendant argues, however, that there is a split in authority which demonstrates that the
15 right to record a police officer conducting official business is not a clearly established right under
16 the First Amendment. ECF No. 35-1 at 6. Relying on *Kelly v. Borough of Carlisle*, 622 F.3d 248
17 (3rd Cir. 2010) and *Szymecki v. Houck*, 353 F. App'x. 852 (4th Cir. 2009) (per curiam), defendant
18 argues that there is "conflict and ambiguity amongst the Court of Appeals" and therefore
19 defendant is entitled to qualified immunity.

20    The cases cited by defendant run against the majority of circuit authority, as well as the
21 weight of district-court decisions. *See Am. Civil Liberties Union of Illinois v. Alvarez*, 679 F.3d
22 583, 601 n. 10 (7th Cir. 2012) (finding that the First Circuit's decision in *Glik* aligns with
23 authority from other circuits). Furthermore, and more importantly, the law in this circuit has been
24 well established for several years that there is a "First Amendment right to film matters of public
25 interest." *Fordyce*, 55 F.3d at 439. The Ninth Circuit's more recent unpublished case, relying in

---

[4] The Ninth Circuit, in an unpublished case, has also held that there is a clearly established constitutional right to photograph an accident scene during a police investigation. *Adkins v. Limtiaco*, 537 F. App'x. 721, 722 (9th Cir. 2013) (citing *City of Houston v. Hill*, 482 U.S. 451, 461 (1987); *Fordyce*, 55 F.3d at 439).

1   part on *Fordyce*, recognized the breadth of that ruling by finding that the law clearly established
2   as to the constitutional right to photograph an accident scene during a public investigation.
3   *Adkins v. Limtiaco*, 537 F. App'x. 721, 722 (9th Cir. 2013) (citing *City of Houston v. Hill*, 482
4   U.S. 451, 461 (1987) and *Fordyce*, 55 F.3d at 439).  For similar reasons, the court finds that under
5   the law of this circuit there is and was on December 7, 2012, a clearly established right to record
6   police officers carrying out their official duties.

7         Defendant attempts to narrowly define the issue in this case for purposes of the immunity
8   analysis.  He argues that there are no cases holding that a probationer, such as plaintiff, has a
9   clearly established First Amendment right to record a search of her residence conducted pursuant
10  to her searchable probation status.  According to defendant, all relevant case law, including the
11  cases previously discussed, only establish the right to record a police officer in public.[5]  ECF No.
12  35-1 at 5-6.  While the distinction is noted, it is one lacking any meaningful difference here.  The
13  location of where the video recording was being made was plaintiff's place of residence.  If a
14  plaintiff has a clearly established constitutional right to record from a public place where the
15  plaintiff has the lawful right to be, a plaintiff surely has such a right in his or her home.  There
16  simply is no principled bases upon which to find that although the right to record officers
17  conducting their official duties only extends to duties performed in public, the right does not
18  extend to those performed in a private residence.  The public's interest in ensuring that police
19  officers properly carry out their duties and do not abuse the authority bestowed on them by
20  society does not cease once they enter the private residence of a citizen.  To the contrary, there
21  appears to be an even greater interest for such recordings when a police officer's actions are
22  shielded from the public's view.  Further, there is no reason to believe that plaintiff's status as a
23  probationer would diminish the public's interest in how police exercise their authority in a private
24  citizen's homes.

---

[5] However, for a right to be clearly established for purposes of qualified immunity there need not be a factually identical case finding the particular conduct unconstitutional. *Torres v. City of Madera*, 648 F.3d 1119, 1128 (9th Cir. 2011).  "To the contrary, [the Ninth Circuit has] repeatedly stressed that officials can still have 'fair warning' that their conduct violates established law 'even in novel factual circumstances,' and even when a novel method is used to inflict injury.'"  *Id*. at 1129 (citation omitted).

1       Assuming that plaintiff's allegations are true, as defendant does in arguing that he is
2  entitled to summary judgment, defendant has failed to establish that he is entitled to qualified
3  immunity.  Plaintiff alleges that she was merely recording the search of her residence and that
4  defendant stopped her by taking away her laptop and deleting her recording.  ECF No. 1 at 2.  If
5  true, this violated plaintiff's First Amendment right to film police officers in the course of
6  carrying out their official duties.  *See Fordyce*, 55 F.3d at 439; *Glik*, 655 F.3d at 82.  There is
7  nothing in plaintiff's account of the facts the shows that she was engaged in any specific acts that
8  interfered with the officer's task of searching the residence.  Nor is there anything in plaintiff's
9  description of the event that demonstrates a legitimate law enforcement purpose for deleting the
10 recording of the search.

11      Defendant further contends that even assuming that plaintiff had a First Amendment right
12 to record the search, it would have been objectively reasonable for defendant to believe that the
13 right to record did not apply in this case because plaintiff, as the subject of the search, may have
14 obstructed his ability to perform his duties.  ECF No. 35-1 at 7.  At least one court has indicated
15 that the right to record police officers carrying out their duties is limited to situations where the
16 recording of the police officer does not interfere with the performance of his duties.  *See Glik*, 655
17 F.3d at 84 ("Such peaceful recording of an arrest in a public space that does not interfere with the
18 police officers' performance of their duties is not reasonably subject to limitation.").  But
19 defendant fails to identify the specific acts by plaintiff that were interfering or immediately
20 threatening to interfere with the officer's performance of his duties.  There is no evidence before
21 the court that would allow for the finding that plaintiff was interfering with defendant's ability to
22 perform his duties.  The only evidence submitted by defendant in support of his motion for
23 summary judgment is his declaration.  ECF No. 35-2.  That declaration, however, is silent as to
24 any facts regarding the laptop plaintiff used to record defendant.  There are no statements about
25 what plaintiff was actually doing while recording plaintiff, nor an explanation of how plaintiff
26 was actually obstructing defendant from performing his duties.  Thus, defendant has failed to
27 meet his burden of establishing that he is entitled to qualified immunity.  Accordingly,
28 defendant's motion for summary judgment must be denied.

III.     Conclusion

Accordingly, it is hereby RECOMMENDED that defendant's motion for summary judgment, ECF No. 35, be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED:  August 5, 2014.

EDMUND F. BRENNAN  
UNITED STATES MAGISTRATE JUDGE

9